IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| YOUNG MEN'S CHRISTIAN ASSOCIATION OF HONOLULU, a Hawaii Nonprofit Corporation,<br><br>Petitioner,<br><br>v.<br><br>ALOHA KAI DEVELOPMENT, LLC, a Hawaii Limited Liability Company,<br><br>Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civ. No. 18-00086 ACK-KSC<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**ORDER GRANTING PETITIONER'S MOTION FOR ORDER CONFIRMING
ARBITRATION AWARD AND DENYING RESPONDENT'S COUNTERMOTION TO
VACATE OR CORRECT THE ARBITRATION AWARD**

For the reasons discussed below, the Court GRANTS

Petitioner's Motion for Order Confirming Arbitration Award and

DENIES Respondent's Countermotion to Vacate or Correct the

Arbitration Award.

BACKGROUND[1]

I.     **The Dispute**

On October 13, 2014, Petitioner Young Men's Christian

Association of Honolulu ("YMCA") and Respondent Aloha Kai

---

[1] This factual background primarily relies upon the Findings
of Fact, Conclusions of Law, and Order of Arbitrator David L.
Fairbanks, see ECF. Nos. 1-2, 7-2, submitted as Exhibit A to the
Declaration of Nickolas A. Kacprowski, ECF No. 1-1, and Exhibit
1 to the Declaration of Michael Blumenthal, ECF No. 7-1.

1

Development, LLC ("AKD")[2] entered into an Amended and Restated Purchase and Sale Agreement (the "Amended PSA") to develop the property located at 401 Atkinson Drive, Honolulu, Hawaii 96814 (the "Property").[3] Declaration of Nickolas A. Kacprowski ("Kacprowski Decl.") Exhibit A, Findings of Fact, Conclusions of Law, and Order (the "Findings") ¶ 3, ECF No. 1-2. The development was to include a new YMCA facility, the subdivision and sale of a portion of the Property, and construction of a high rise condominium project. Id. at 1.

The Amended PSA set a closing date of sixty days after AKD obtained certain entitlements for the project. Id. ¶ 7. If a party became unable to perform its obligations on the closing date due to reasons beyond its control, that party had the right to extend the closing date for an additional period not to

---

[2] AKD is a limited liability company with two members: (1) MB Properties Acquisitions, LLC, whose sole member is a resident of California and (2) TAMA Home America, LLC, whose sole member is a company incorporated in Japan with its principal place of business in Japan. See Pet'r's Mot. for Order Confirming Arbitration Award. ECF No. 1 at 1-2.

[3] Various sections of the Amended PSA are included as Exhibit C to the Declaration of Nickolas A. Kacprowski . ECF No. 1-4, and Exhibit 3 to the Declaration of Michael Blumenthal, ECF No. 7-4. Significantly, the parties' relationship dates back to at least April 2012, when YMCA and AKD's predecessor in interest, MB Property Acquisitions, LLC, entered into the original Purchase and Sale Agreement to develop YMCA's Property. Kacprowski Decl., Ex. A, Findings of Fact, Conclusions of Law, and Order ¶ 6, ECF. No. 1-2.

exceed thirty days.  Id.

The parties executed a First Amendment To Amended And Restated Purchase And Sale Agreement (the "First PSA Amendment") in early 2016.  Id. ¶ 9; YMCA Reply, Kacprowski Decl., Ex. D ¶ 3.  Under the First PSA Amendment, the closing date was extended to April 30, 2016.  Findings ¶ 9a.  Among other provisions, the First PSA Amendment also directed that "[t]here shall be no further extensions of the Closing Date except as mutually agreed upon by the Parties in a signed written agreement."  Id. ¶ 9b. The First PSA Amendment further stated that "EIGHT HUNDRED THOUSAND AND NO/100 ($800,000.00) of the Developer's Initial Deposit [of $1,000,000.00] deposited in to the Escrow Account has already been released by Escrow Holder to the YMCA, and that this amount is nonrefundable in all events, but shall be applied against the Purchase Price on the Closing Date."[4]  Id. ¶ 9c; see also YMCA Reply, Kacprowski Decl., Ex. D ¶ 3.

On April 28, 2016, AKD emailed a letter to YMCA. Findings ¶ 11.  The letter requested, among other things, that YMCA agree to various closing date extensions in exchange for the release of certain amounts from the original deposit held in

---

[4] The non-refundable nature of the $800,000.00 release from escrow was significant because, as YMCA explained at the May 30, 2018 hearing, all previous releases from escrow were expressly refundable if the transaction failed to close.

escrow. Id. ¶ 11e. On April 29, 2016, YMCA emailed a letter response to AKD. Id. ¶ 12. YMCA's letter stated that it was willing to grant AKD's requested extension on two conditions: (1) the extensions were for the sole purpose of allowing more time for AKD to effect the transaction as set forth in an attached summary; and (2) AKD and YMCA would sign an amendment to the PSA documenting such extensions and providing for a mutual termination and release to become effective if AKD were unable to close on the extended closing date. Id. ¶ 12a. YMCA's letter further directed that, if its conditions were agreeable to AKD, AKD was to notify YMCA, which in turn would draft a Second PSA Amendment for the parties to execute. Id. ¶ 12b.

The same day that AKD received YMCA's letter, it forwarded YMCA a Demand for Mediation, pursuant to section 18.1 of the Amended PSA. Id. ¶ 13. Further, AKD and YMCA never executed a written agreement extending the closing date beyond the April 30, 2016 closing date specified in the First PSA Amendment. Id. ¶ 14. The transaction did not close by April 30, 2016, and despite ongoing discussions between the parties regarding potential modifications to the Amended PSA, the parties never came to a written agreement to extend the closing date. Id. ¶¶ 15-16. On June 6, 2016, YMCA issued a Notice of Default on the Amended PSA. Id. ¶ 17.

4

Later that month, the parties' principals met. Id. ¶ 18. AKD asserted at the eventual arbitration in this matter that the meeting of principals produced an agreement "on essential terms that both sides found agreeable" to close the transaction by August 15, 2016 "on what was essentially the current PSA." Id. ¶ 18 (quoting YMCA Reply Ex. L at 22, ECF No. 10-11).

As a result of the June meeting of principals, YMCA transmitted on July 6, 2016, a draft Second Amendment to the Amended PSA (the "Second PSA Amendment Draft") for AKD's review. Id. ¶ 19. The Second PSA Amendment Draft provided, among other things, that: (1) closing had to occur by August 15, 2016; and (2) upon execution of a final version of the Second PSA Amendment Draft, the parties would concurrently sign and deliver into escrow a Termination and Release Agreement and Joint Escrow Instructions, and AKD would sign and deliver into escrow a Bill of Sale for the project documents for the new YMCA facility. Id. ¶¶ 19a, 19b. The Second PSA Amendment Draft further required that the final version and other documents should be signed and delivered to escrow by July 13, 2016. Id. ¶ 19e.

On July 12, 2016, AKD provided its response to YMCA's Second PSA Amendment Draft. Id. ¶ 20. In its response, AKD made several requests for modifications or deletions of terms that YMCA had proposed in its draft. Id. ¶¶ 20a-f.

YMCA responded by letter from its counsel on July 15, 2016, which forwarded a revised Second PSA Amendment Draft. Id. ¶ 21. The cover letter YMCA's counsel sent to AKD explained that "YMCA [management] ha[d] not yet reviewed these drafts. . . . [and counsel was] sending these drafts to [AKD] and the YMCA for simultaneous review and comment and, therefore, reserve[d] the right to make changes upon the YMCA's review of the same." Id. ¶ 21b (certain alterations in original). AKD responded to YMCA's revised Second PSA Amendment Draft on July 26, 2016, with further requests for changes. E.g., ¶ 22b.

On July 28, 2016, YMCA served AKD with a Notice of Termination, pursuant to section 11.1(d) of the Amended PSA. Id. ¶ 23. The Notice of Termination stated YMCA's view that the parties never agreed on a final version of the Second PSA Amendment Draft, and demanded at least $1 million in liquidated damages. Id. ¶¶ 23a-b.

AKD responded to YMCA by letter on August 11, 2016. Id. ¶ 24. AKD's letter stated that: (1) all required documents and funds had been deposited into escrow; (2) a copy of the Second PSA Amendment Draft YMCA's counsel sent on July 15, 2016— signed only by AKD—was enclosed; (3) AKD had "fulfilled all requirements to close the transaction by August 15, 2016, except for the documents that are in the control and must be signed by YMCA"; and (4) YMCA should take action to affect the August 15,

2016 closing.  Id. ¶¶ 24a-e.  No evidence was submitted in the arbitration in this matter that YMCA ever signed the version of the Second PSA Amendment Draft that AKD signed and submitted in its letter.  Id. ¶ 26.

## II.  The Arbitration

On November 30, 2016, YMCA filed its Arbitration Demand.  Id. ¶ 1.  AKD filed its Answer to Arbitration Demand and Counterclaim on December 22, 2016.  Id. ¶ 2.  Neither party claimed that the arbitrator lacked jurisdiction over the matter or that the governing arbitration clause located in article XVIII of the Amended PSA was invalid.  Kacprowski Decl. ¶ 6.  Significantly, the arbitration clause states:  "The Award rendered by the Arbitrator shall be final, and judgment may be entered upon it in accordance with [Hawaii's Uniform Arbitration Act ("HUAA"), HRS Chapter 658A]."  Id. Ex C. at § 18.2(d).

From December 4 to December 12, 2017, following wide-ranging discovery and motions practice, the parties participated in the arbitration.  E.g., id. ¶¶ 7-10; Pet'r's Mot. for Order Confirming Arbitration Award ("YMCA Motion") at 4-6.[5]  On January 31, 2018, the arbitrator issued the Findings, which ruled in

---

[5] The arbitration featured over 50,000 pages of documents exchanged in discovery, 19 depositions, 8 motions, 468 exhibits, and 7 days of testimony by 19 witnesses.  See YMCA Motion at 1, 5-6; YMCA Reply at 1.

favor of YMCA and against AKD, and against AKD on its counterclaim.  Findings at 23-24.

In the Findings, the arbitrator found that the Amended PSA and First Amended PSA were valid and binding agreements between the parties.  Id. ¶ 30.  The arbitrator then found that YMCA properly terminated the Amended PSA and First Amended PSA, and AKD had no right to acquire the Property.  Id. ¶¶ 32-34, 36, 40.  The arbitrator further ruled that YMCA was entitled to damages of $1,000,000 and would receive the $200,000 remaining in the project's escrow account as partial payment.  Id. Significantly, the arbitrator determined that the $800,000 of AKD's initial deposit that had been released to YMCA as memorialized in the First PSA Amendment was "payment/ consideration for the extension of the Closing Date, and [was] not [meant] as any offset to any future liquidated damages that might be awarded pursuant to Section 15.1 of the Amended PSA." Id. ¶ 46c.  The arbitrator opined that AKD confirmed this understanding in its closing brief during the arbitration.  Id. ¶ 46d (citing YMCA Reply Ex. L at 57, ECF No. 10-11).  Finally, the arbitrator ruled that YMCA was entitled to recover reasonable attorneys' fees, expenses, and costs, and instructed YMCA to file an affidavit and supporting documentation to substantiate its request for attorneys' fees, expenses, and costs.  Id. at 24.

Following the issuance of the Findings, on March 2, 2018, the arbitrator issued a Ruling on YMCA's Request for Fees and Costs, which incorporated the Findings by reference, and entered a Final Decision and Arbitration Award in favor of the YMCA in the amount of $1,946,579.17. Kacprowski Decl. Ex. B (the "Fee Award") at 17.

On March 7, 2018, YMCA filed its Motion for Order Confirming Arbitration Award with this Court. ECF No. 1. On May 1, 2018, AKD filed its opposition and countermotion to vacate or correct the arbitration award ("Opp."), ECF No. 7, to which YMCA filed a reply and memorandum in opposition ("YMCA Reply") on May 16, 2018, ECF No. 10. On May 23, 2018, AKD filed a reply memorandum in support of its countermotion ("AKD Reply"). ECF No. 12. The Court held a hearing on YMCA's motion and AKD's countermotion on May 30, 2018.

## APPLICABLE LAW

YMCA states, and AKD does not challenge, that the Amended PSA makes Hawaii Revised Statutes ("HRS") chapter 658A the applicable law in this matter. E.g., YMCA Motion at 7. Its argument relies on the language of the Amended PSA, which directs that "[a]ll arbitration proceedings shall be administered . . . in accordance with Hawaii's Uniform Arbitration Act (Hawaii Revised Statutes Chapter 658(A) (the 'HUAA')." Amended PSA § 18.2(a). But this provision alone—

which by its terms applies only to all "arbitration proceedings"—may be insufficient to nullify the Ninth Circuit's "strong default presumption that the [Federal Arbitration Act (the "FAA")], not state law, supplies the rules" for confirmation of arbitration awards.  Johnson v. Gruma Corp., 614 F.3d 1062, 1066-67 (9th Cir. 2010) (ellipsis and internal quotation marks omitted) (quoting Fid. Fed. Bank, FSB v. Durga Ma Corp., 386 F.3d 1306, 1311 (9th Cir. 2004)).  As this Court has explained, that "presumption only can be overcome by clear intent to incorporate state law rules for arbitration" into the confirmation of arbitration awards.  Metzler Contracting Co. LLC v. Stephens, 774 F. Supp. 2d 1073, 1077 (D. Haw. 2011) (internal quotation marks omitted), aff'd, 479 F. App'x 783 (9th Cir. 2012).

In another provision, indeed, the Amended PSA appears to specify that state law governs the confirmation of arbitration awards.  Specifically, section 18.2(d) of the Amended PSA states:  "[t]he award rendered by the Arbitrator shall be final, and judgment may be entered upon it in accordance with the HUAA."  (Emphasis added).  The Amended PSA thus contains the type of express limitation stating that the arbitration award may be confirmed under state law that this Court found lacking in Metzler Contracting Co. LLC, 774 F. Supp. 2d at 1077.  And, as YMCA points out, courts in this district

sitting in diversity have previously applied state law to the confirmation of an arbitration award.  E.g., Valrose Maui, Inc. v. Maclyn Morris, Inc., 105 F. Supp. 2d 1118, 1122 & nn.5-6 (D. Haw. 2000).  Under these circumstances, the Court finds that the HUAA governs the confirmation of YMCA's arbitration award.[6]

**STANDARD**

Under the HUAA, and given "the legislative policy to encourage arbitration and thereby discourage litigation, judicial review of an arbitration award is confined to 'the strictest possible limits.'"  Ventress v. Japan Airlines, 603 F.3d 676, 679 (9th Cir. 2010) (citing Gadd v. Kelley, 66 Haw. 431, 667 P.2d 251, 258 (Haw. 1983)).  Accordingly, HRS § 658A requires courts to confirm arbitration awards unless an award is modified or corrected pursuant to § 658A-24, or vacated under limited circumstances pursuant to § 658A-23.  Matter of Hawai'i State Teachers Ass'n, 140 Haw. 381, 391, 400 P.3d 582, 592 (Haw. 2017); In re Grievance Arbitration Between State Org. of Police Officers, 135 Haw. 456, 462, 353 P.3d 998, 1004 (Haw. 2015).

---

[6] The Court notes that the state and federal standards for confirming and vacating arbitration awards are nearly identical and the Court has previously treated them as such.  See Howard Fields & Assocs. v. Grand Wailea Co., 848 F. Supp. 890, 894-95 (D. Haw. 1993) ("[T]he State of Hawaii has enacted an arbitration act that is virtually the same as the federal act."); see also Metzler Contracting Co. LLC, 774 F. Supp. 2d at 1077 (citing Howard Fields & Assocs., 848 F. Supp. at 895).

One permissible ground for a court to vacate an award under the HUAA, for example, is where "[a]n arbitrator exceeded the arbitrator's powers." HRS § 658A-23(a)(4). A permissible ground for an arbitration award to be modified or corrected is where "there was an evident mathematical miscalculation or an evident mistake in the description of the person, thing, or property referred to in the award." Id. § 658A-24(a).

However, "the scope of an arbitrator's authority is determined by the agreement of the parties," and an arbitrator is imbued with broad discretion in resolving a dispute. Kona Village Realty, Inc. v. Sunstone Realty Partners, XIV, LCC, 123 Haw. 476, 477, 236 P.3d 456, 457 (Haw. 2016). "[P]arties who arbitrate a dispute assume all the hazards of the arbitration process including the risk that the arbitrators may make mistakes in the application of law and in their findings of fact," thus "[w]here arbitration is made in good faith, parties are not permitted to prove that an arbitrators [sic] erred as to the law or the facts of the case." Tatibouet v. Ellsworth, 99 Haw. 226, 233, 54 P.3d 397, 404 (Haw. 2002) (quoting Wayland Lum Constr. Inc. v. Kaneshige, 90 Haw. 417, 422, 978 P.2d 855, 860 (Haw. 1999)).[7] Moreover, a "court's job is not to second-guess

_____

[7] Tatibouet was decided under Hawaii's since-repealed statutes governing vacating and modifying or correcting (continued . . . . )

12

the arbitrator's contract interpretation, but only to ensure that he is, in fact, interpreting the contract." Ass'n of Flight Attendants, AFL-CIO v. Aloha Airlines, Inc., 158 F. Supp. 2d 1200, 1205 (D. Haw. 2001) (citing Hawaii Teamsters and Allied Worker's Union, Local 996 v. United Parcel Service, 241 F.3d 1177 (9th Cir. 2001)).  To that end, the Supreme Court of Hawaii has stated that "vacatur is not a proper remedy for an arbitrators' imperfect understanding of law." Tatibouet, 99 Haw. at 236, 54 P.3d at 407.

## DISCUSSION

The arbitrator found that the Amended PSA and First PSA Amendment were valid and binding contracts between YMCA and AKD, Findings ¶ 30, but that the Second PSA Amendment was not, id. ¶ 32.  Because AKD did not close by the date specified in the First PSA Amendment, April 30, 2016, the arbitrator found that YMCA had the right to terminate the Amended PSA.  Id. ¶ 36. Neither party disputes these findings, e.g., Opp. at 3, and the Court confirms them.

After making these findings, the arbitrator awarded

---

(continued . . . . )
arbitration awards, HRS § 658-9 and HRS § 658-10.  E.g., YMCA Reply at 3 n.3.  The current statutes governing vacatur, modification, or correction, HRS § 658A-23 and HRS § 658A-24, are substantially similar to those sections they replaced, and the Court finds that this distinction does not detract from Tatibouet's persuasiveness or effect.

YMCA $1,946,579.17—an amount which includes liquidated damages

and reasonable attorneys' fees and costs.  Fee Award at 17.

YMCA now moves for an order confirming the award under HRS §

658A-22, which provides:

> After a party to an arbitration proceeding
> receives notice of an award, the party may
> make a motion to the court for an order
> confirming the award at which time the court
> shall issue a confirming order unless the
> award is modified or corrected pursuant to
> section 658A-20 or 658A-24 or is vacated
> pursuant to section 658A-23.

AKD opposes the confirmation, arguing that the award should be

vacated, modified, or corrected because the arbitrator: (1)

exceeded his powers by "rewriting" the damages cap in the

Amended PSA; and (2) awarded YMCA attorneys' fees in violation

of the Amended PSA, the HUAA, and applicable law.  E.g., Opp. at

1-2.  The Court addresses these arguments in turn.

## I.  Damages Cap

AKD contends that the arbitrator exceeded his powers

when he failed to limit YMCA's damages to the "the Deposit" as

the Amended PSA requires.  Opp. at 13; AKD Reply at 4-8.  AKD

accordingly requests that the Court either vacate or correct the

arbitrator's award of $1,000,000 in liquidated damages to AKD.

E.g., Opp. at 16.

Two Amended PSA provisions govern the amount of

damages to which YMCA is entitled upon AKD's default.  First,

section 15.1 of the Amended PSA provides YMCA's remedies upon

default and states:

> Notwithstanding any other provision
> contained in this Agreement, if the sale of
> the Tower Site is not consummated by reason
> of any default by the Developer under this
> Agreement, and provided that all conditions
> precedent to the Developer's obligations
> hereunder have been fully satisfied or
> waived in writing or are capable of being
> satisfied in conjunction with the Closing;
> and provided, further, that the YMCA is not
> in default hereunder, then the YMCA shall,
> as its sole and exclusive remedy, <u>be
> entitled to retain the entire Deposit</u> as the
> YMCA's liquidated damages. . . . THE
> LIQUIDATED DAMAGES <u>IN THE AMOUNT OF THE
> DEPOSIT</u> REPRESENTS A REASONABLE ESTIMATE OF
> SUCH DAMAGES.

Amended PSA § 15.1 (emphasis added). Second, the "Deposit"

referenced in section 15.1 is defined in Section 3.3 of the

Amended PSA, which states:

> The Parties acknowledge that the Developer
> has deposited with Escrow Holder the sum in
> the amount of ONE MILLION AND N0/100 DOLLARS
> ($1,000,000.00) (the "Deposit"). The
> Deposit shall be held and disbursed by
> Escrow Holder pursuant to the provisions of
> this Agreement. The remaining balance of
> the Purchase Price shall be deposited in
> cash into Escrow at the time of Closing. . .
> . The YMCA and the Developer agree that
> $500,000.00 of the Developer's Deposit shall
> remain in Escrow for the benefit of the
> Developer unless and until it is applied to
> the Purchase Price at Closing. In the event
> the YMCA or the Developer terminates this
> Agreement in accordance with the terms and
> provisions of this Agreement, then the
> Developer shall receive a return of either
> (a) the amount specified (if less than the

entire Deposit) plus the $500,000.00, or (b)
                    the entire Deposit, as the case maybe.

Amended PSA § 3.3.

        AKD argues that these provisions collectively limit

YMCA's liquidated damages to the amount of the initial deposit

remaining in escrow at the time of the arbitration.  E.g., Opp.

at 14.  According to AKD, because $800,000.00 of the initial

deposit was released to YMCA from escrow at the time the First

PSA Amendment extended the closing date of the project to April

30, 2016, YMCA's liquidated damages should have been limited to

the $200,000.00 remaining in escrow.  Id.

        The arbitrator awarded YMCA $1,000,000, however, and

the Court finds the arbitrator's interpretation of the Amended

PSA plausible and within his authority.  Desert Palace, Inc. v.

Local Joint Executive Bd. of Las Vegas, 679 F.2d 789, 793 (9th

Cir. 1982) ("It is not the district court's function to choose

among the various interpretations of a contract as long as the

arbitrator's interpretation is plausible."); see also McCabe

Hamilton & Renny Co. v. Int'l Longshore & Warehouse Union, Local

142, AFL-CIO, 624 F. Supp. 2d 1236, 1246 (D. Haw. 2008) ("The

Arbitrator's decision presents a plausible interpretation of the

CBA, and this court does not question the correctness of that

interpretation.").  Given the narrow scope of the Court's

review, the Court will not revisit the arbitrator's

interpretation of the Amended PSA.  And AKD makes no argument
that the arbitrator lacked authority to interpret the liquidated
damages provision.  <u>See</u> YMCA Reply at 6, 10.

Even if this Court could review the arbitrator's
interpretation anew, the Amended PSA's text seems to support the
arbitrator's $1,000,000 liquidated damages award in several
ways.  First, the Amended PSA's liquidated damages provision
states that "the YMCA shall, as its sole and exclusive remedy,
be entitled to retain <u>the entire Deposit</u> as the YMCA's
liquidated damages."  Amended PSA § 15.1.  The entire deposit,
the Amended PSA makes clear, is "the amount of ONE MILLION AND
N0/100 DOLLARS ($1,000,000.00) (the 'Deposit')."  <u>Id.</u> § 3.3.
That $800,000.00 of the initial deposit was later released to
YMCA separate from any liquidated damages award does not render
the arbitrator's interpretation of "the entire Deposit" as
meaning "the amount of ONE MILLION AND NO/100 DOLLARS
($1,000,000.00)" implausible or unsupportable under the Amended
PSA.[8]

_____

[8] Indeed, the arbitrator determined that the parties
understood the $800,000.00 that was released from escrow upon
the First PSA Amendment to be consideration for YMCA's agreement
to extend the closing date of the project.  <u>See</u> Findings ¶ 46d.
The arbitrator noted that the First PSA Amendment stated that
the $800,000.00 was "nonrefundable in all events, but shall be
applied against the Purchase Price on the Closing Date."  <u>Id.</u> ¶
46a.  Because all prior releases from escrow were expressly
(continued . . . . )

Second, the Amended PSA's liquidated damages provision states that "THE LIQUIDATED DAMAGES IN THE AMOUNT OF THE DEPOSIT REPRESENTS A REASONABLE ESTIMATE OF SUCH DAMAGES." Amended PSA § 15.1. The arbitrator's interpretation that liquidated damages "in the amount of the deposit" means "the amount of ONE MILLION AND NO/100 DOLLARS ($1,000,000.00)"—rather than whatever amount was left in escrow from the initial deposit—finds support in the Amended PSA. At the very least, the Court cannot find that the arbitrator failed to interpret the contract in a plausible manner or exceeded his authority in doing so.

The Court reiterates that its "job is not to second-guess the arbitrator's contract interpretation, but only to ensure that he is, in fact, interpreting the contract." Ass'n of Flight Attendants, AFL-CIO, 158 F. Supp. 2d at 1205

---

(continued . . . . )
refundable if the transaction failed to close, the fact that the $800,000.00 was non-refundable—even if YMCA defaulted under the Amended PSA—established that the $800,000.00 was meant as payment/consideration for the closing date extension.

The arbitrator then considered the parties' evidence and oral testimony, which he found to confirm his interpretation that the $800,000.00 was not meant as an offset to any future liquidated damages. Id. ¶¶ 46a-d. The arbitrator specifically observed that AKD confirmed this testimony in its closing brief during the arbitration. Id. ¶ 46d (citing YMCA Reply Ex. L at 57, ECF No. 10-11). The Court notes, moreover, that the arbitrator's interpretation is consistent with what appears to be the parties' intent: in the absence of AKD's default, the $800,000.00 payment released from escrow would have combined with the $200,000.00 remaining in escrow to form a $1,000,000.00 credit against the Purchase Price upon the Closing Date.

(citations omitted). "Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept." Southern California Gas Co. v. Utility Workers Union of America, Local 132, AFL-CIO, 265 F.3d 787, 797 (9th Cir. 2001) (internal citation omitted).

The Court also notes that AKD's interpretation of the Amended PSA's liquidated damages provision would produce seemingly illogical results. Under AKD's interpretation, YMCA could be left without a remedy for AKD's default if no amount of the initial deposit remained in escrow for any reason. The Court observes that limiting YMCA's exclusive remedy upon default to the amount of the initial deposit remaining in escrow, if any, is not a result compelled by the Amended PSA's text; indeed, it is a result that seems counter to the purpose of a liquidated damages provision. As the provision itself states, liquidated damages "represent a reasonable estimate" of damages "under the circumstances existing as of the date of this agreement." Amended PSA § 15.1.

The Court therefore finds that AKD has established neither that its interpretation is compelled by the Amended PSA's text, nor that the arbitrator's interpretation was implausible or in excess of his authority. Further, AKD has not

19

established that the arbitrator intentionally and plainly disregarded the substantive law. Ventress, 603 F.3d at 680. To the extent AKD argues that its interpretation of the Amended PSA is superior to the arbitrator's, that argument is insufficient. E.g., Ventress, 603 F.3d at 679. Accordingly, AKD has shown no grounds on which the Court can properly vacate, correct, or modify the $1,000,000.00 liquidated damages award.

## II.  Award of Attorneys' Fees and Costs

The Amended PSA also contains provisions governing the parties' entitlement to attorneys' fees and costs accrued in connection with arbitration. Section 18.2(e) of the Amended PSA directs that "[t]he Arbitrator shall have the power to award attorney fees and other costs related to the arbitration to the prevailing party." Amended PSA § 18.2(e). Section 19.8 of the Amended PSA similarly states:

> In the event YMCA or [AKD] brings any suit or other proceeding with respect to the subject matter or enforcement of this Agreement, the prevailing party (as determined by the court, agency or other authority before which such suit or proceeding is commenced) shall, in addition to such other relief as may be awarded, be entitled to recover reasonable attorneys' fees, expenses and costs of investigation as actually incurred . . . .

Id. § 19.8 (emphasis added). The arbitrator awarded $946,579.17 under these provisions in the Fee Award. Fee Award at 17.

AKD contends that the arbitrator's Fee Award is

"flawed in many respects." Opp. at 16. These purported flaws
include that: (1) the arbitrator did not properly determine
that YMCA was the "prevailing party" entitled to fees; (2) the
fees awarded were not "reasonable" given AKD's success in
reducing the damages awarded compared to those YMCA originally
claimed; and (3) the arbitrator disregarded the statutory cap of
twenty-five percent of the judgment. Id. Although AKD stated
at the May 30, 2018 hearing that its challenge to the Fee Award
focuses only on the first two of these grounds, its briefing
raised other challenges that the Court also addresses below.

### A. "Prevailing Party" Status

AKD's argument that YMCA was not the "prevailing
party" in the arbitration is unpersuasive. A "party in whose
favor judgment is rendered is generally the prevailing party for
purposes of awarding costs . . . ." San Diego Police Officers'
Ass'n v. San Diego City Emps.' Ret. Sys., 568 F.3d 725, 741 (9th
Cir. 2009) (internal quotation marks omitted). Courts have
explained that a party need not prevail on all of its claims to
be found the prevailing party, and prevailing party status "does
not turn on the magnitude of the relief obtained." Farrar v.
Hobby, 506 U.S. 103, 114 (1992); San Diego Police Officers'
Ass'n, 568 F.3d at 741. A "technical victory may be so
insignificant . . . as to be insufficient to support prevailing
party status," Tex. State Teachers Ass'n v. Garland Indep. Sch.

Dist., 489 U.S. 782, 792 (1989), however, a plaintiff who wins
even nominal damages is generally considered the prevailing
party, e.g., Farrar, 506 U.S. at 113 ("A judgment for damages in
any amount, whether compensatory or nominal, modifies the
defendant's behavior for the plaintiff's benefit by forcing the
defendant to pay an amount of money he otherwise would not
pay.").

The Amended PSA directs that "the prevailing party
(as determined by the court, agency or other authority before
which such suit or proceeding is commenced)" may be entitled to
reasonable attorneys' fees and costs.  Amended PSA § 19.8.  In
the Findings, the arbitrator "rule[d] in favor of YMCA and
against AKD and AKD's Counterclaim."  Findings at 23.
Consistent with finding that YMCA was the "prevailing party,"
the arbitrator found "it appropriate to . . . award reasonable
attorneys' fees, costs and expenses to YMCA as provided in the
Amended PSA" under Section 19.8.  Id. at 24 and ¶¶ 49, 51.
These statements establish that the arbitrator determined that
YMCA was the prevailing party, as he had authority to do under
the Amended PSA.  The arbitrator's determination that YMCA was
the prevailing party was also clear in the Fee Award.  See Fee
Award at 1, 15.  In the absence of a reason under HRS § 658A why
the arbitrator's determination should be vacated, modified or
corrected, the Court will not disturb it.

AKD seems to argue that YMCA is not the "prevailing party" because it sought far more damages than it was ultimately awarded. Opp. at 17. To that end, AKD states that "YMCA sought damages of up to $19.7 million for AKD's alleged breach of the PSA" but the arbitrator "issued a preliminary ruling that the [Amended] PSA's liquidated damages provision was valid and enforceable" and "limited [YMCA's damages] to the $1,000,000 deposit pursuant to the terms of the [Amended PSA]."[9] Id. Based on AKD "obtaining a nearly 95% reduction of the YMCA's claimed damages," AKD seems to argue that YMCA did not prevail in the arbitration.

As an initial matter, the Court notes the tension between AKD's earlier argument that YMCA received more in damages than the Amended PSA's liquidated damages clause permits. AKD also ignores that YMCA succeeded in defending against the entirety of AKD's counterclaim. See Findings at 23. Leaving that tension aside, however, AKD cites no authority for the proposition that the ratio of damages a party receives to the damages it initially claimed is at all determinative of prevailing party status. Rather, the general rule is that a party need not prevail on all of its claims to be found the

_____

[9] The Court notes that AKD's counterclaim unsuccessfully sought relief valued at around $32 million. See, e.g., YMCA Reply Ex. N at ¶¶ 84, 99, 103-05, ECF No. 10-13.

prevailing party, and prevailing party status "does not turn on the magnitude of the relief obtained."[10]  <u>Farrar</u>, 506 U.S. at 114.

Moreover, in order to support its liquidated damages award under the Amended PSA, YMCA had to establish that its actual damages were reasonably related to the amount of liquidated damages it was entitled to recover.[11]  <u>OWBR LLC v. Clear Channel Commc'ns, Inc.</u>, 266 F. Supp. 2d 1214, 1226 (D. Haw. 2003) ("Under Hawaii law, liquidated damages contained in a contract must be enforced if there is a 'reasonable relation' between the liquidated damages and the amount of the party's actual damages."); <u>Shanghai Inv. Co. v. Alteka Co.</u>, 92 Haw. 482, 495, 993 P.2d 516, 529 (Haw. 2000), as amended (Feb. 4, 2000) (same); <u>see also</u> Opp., Declaration of Michael Blumenthal ("Blumenthal Decl.") Ex. 4 at 4-5.  This is because a liquidated

---

[10] For this reason, among others, AKD's reliance on YMCA's failure to prevail on its tortious interference claim to show that YMCA was only "partially" successful in the arbitration, Opp. at 17 n 10, is unavailing.

[11] Contrary to AKD's argument at the May 30, 2018 hearing, the arbitrator's Ruling on Remedies Provisions in the Amended PSA explicitly states, among other things, that "a non-breaching party has an affirmative obligation to present evidence of its 'actual damages' before it will be allowed to retain <u>any</u> portion of the liquidated damages amount, and failure to present such evidence results in the non-breaching party being unable to recover and/or retain any of the liquidated damages amount specified under the contract."  Opp., Blumenthal Decl. Ex 4 at 4 (emphasis in original).

damages clause is unenforceable if it functions as a penalty or forfeiture.  E.g., Am. Elec. Co., LLC v. Parsons RCI, Inc., 90 F. Supp. 3d 1079, 1084 (D. Haw. 2015) ("[A] liquidated damages clause that constitutes a penalty will not be enforced."); Kapunakea Partners v. Equilon Enterprises LLC, 679 F. Supp. 2d 1203, 1213 (D. Haw. 2009) (explaining that, under Hawaii Law, "liquidated damages functioning as a penalty for breach are impermissible. . . ." (citations omitted)); Kona Hawaiian Assocs. v. Pac. Grp., 680 F. Supp. 1438, 1449 (D. Haw. 1988) ("Hawaii law is clear that a liquidated damages clause that constitutes a penalty will not be enforced").  In this sense, though YMCA did not recover the $19.7 million it claimed in actual damages, YMCA succeeded in establishing that the liquidated damages award did not constitute a penalty or forfeiture.  See also Opp., Blumenthal Decl. Ex. 4 at 4.

The arbitrator "rule[d] in favor of YMCA and against AKD and AKD's Counterclaim."  Findings at 23.  In so ruling, the arbitrator found that: (1) AKD breached the Amended PSA; (2) YMCA was entitled to the maximum damages permissible under the Amended PSA's liquidated damages clause ($1 million); (3) the $800,000.00 previously released to YMCA from escrow was not intended as an offset to YMCA's liquidated damages, but was instead payment/consideration for the closing date extension; and (4) AKD's entire counterclaim—seeking an amount over $32

million—was unmeritorious.  Id. at 23-24 and ¶¶ 36, 45, 46, 47.

YMCA's victory thus was not insignificant or merely technical.

Under these circumstances, the Amended PSA supports the

arbitrator's interpretation that he had authority to award YMCA

its reasonable attorneys' fees, costs and expenses.

### B. "Reasonable Attorneys' Fees"

AKD also argues that the arbitrator's award of

attorneys' fees and costs to YMCA was excessive and

unreasonable.  Opp. at 19 (citation omitted); AKD Reply at 9-10.

However, "even if [the Court] were inclined to view the

attorneys' fees award as 'unreasonable,' the determination of

the reasonableness of the attorneys' fees was clearly within the

scope of the Arbitrators' authority and cannot be vacated or

modified by a reviewing court."[12] Kona Vill. Realty, Inc. v.

Sunstone Realty Partners, XIV, LLC, 121 Haw. 110, 115–16, 214

P.3d 1100, 1105-06 (Haw. Ct. App. 2009), aff'd, 123 Haw. 476,

236 P.3d 456 (Haw. 2010); see also YMCA Reply at 12-14.  Given

this authority, the Court's analysis could end here; but the

Court addresses AKD's position below.

---

[12] The Court notes that if the law were otherwise, every
award of "reasonable" attorneys' fees in arbitration would
require the reviewing court to engage in an independent analysis
of the reasonableness of attorneys' fees before confirming an
arbitration award.  Such a requirement would run counter to
Hawaii's "legislative policy to encourage arbitration and
thereby discourage litigation."  Ventress, 603 F.3d at 679.

A major ground on which AKD challenges the
reasonableness of YMCA's attorneys' fees and cost award is the
arbitrator's purported failure to engage in the analysis set
forth by the Supreme Court in Hensley v. Eckerhart, 461 U.S.
424, 435-36 (1983). Opp. at 17-20. Pursuant to Hensley, once a
party establishes its entitlement to an award of attorneys' fees
and costs, an arbitrator must determine what fee is
"reasonable." Hensley, 461 U.S. at 433. Reasonable attorneys'
fees are generally based on the traditional "lodestar"
calculation. See Fischer v. SJB-P.D. Inc., 214 F.3d 1115, 1119
(9th Cir. 2000). First, a reasonable fee is determined by
multiplying "the number of hours reasonably expended on the
litigation" by "a reasonable hourly rate." Hensley, 461 U.S. at
433. Second, the lodestar amount may be adjusted based on an
evaluation of the factors articulated in Kerr v. Screen Extras
Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975), which have not
been subsumed in the lodestar calculation. See Ballen v. City
of Redmond, 466 F.3d 736, 746 (9th Cir. 2006); Fischer, 214 F.3d
at 1119 (citation omitted).

The relevant Kerr factor to be considered in this
matter is "the results obtained" factor. Kerr, 526 F.2d at 70.
"This factor is particularly crucial where a plaintiff is deemed
'prevailing' even though he succeeded only on some of his claims
for relief." Hensley, 461 U.S. at 434. AKD claims that the Fee

27

Award should be vacated, or at least modified or corrected, because YMCA "achieved only partial or limited success." Opp. at 19 (citation omitted). As discussed above, however, "vacatur is not a proper remedy [even] for an arbitrators' imperfect understanding of law." Tatibouet, 99 Haw. at 236, 54 P.3d at 407.

First, the Court questions whether YMCA can fairly be characterized as "partially successful" in the arbitration. YMCA prevailed in the arbitration, successfully defended against AKD's counterclaim, and was awarded the maximum damages permissible under the Amended PSA's liquidated damages provision. AKD's argument that the arbitrator failed to "determine whether a full fee award . . . was reasonable given that AKD prevailed on the $19.7 million damage claim" relies upon a preliminary ruling on a remedies issue that ignores the outcome of the broader arbitration. Opp. at 19. Further, and as explained above, YMCA had to establish a relationship between its actual damages and the liquidated damages to which it was entitled to show that the latter did not function as a penalty or forfeiture.[13] Am. Elec. Co., LLC, 90 F. Supp. 3d at 1084.

---

[13] The arbitrator denied YMCA's actual damages on the basis that the Amended PSA limited YMCA's damages to the liquidated damages provision, which the arbitrator found was valid and enforceable. Opp., Blumenthal Decl. Ex 4 at 5.

Additionally, as YMCA asserts, the arbitration seemed to center on title to the Property rather than the amount of damages awarded.  YMCA Reply at 16.  It is thus plausible that the arbitrator viewed YMCA as a successful party rather than a "partially" successful party.

Even if YMCA were only partially successful, however, the arbitrator seems to have engaged in the analysis <u>Hensley</u> requires.  Consideration of "the results obtained" factor under <u>Hensley</u> typically involves answering two questions: "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded?  Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award."  <u>Hensley</u>, 461 U.S. at 424.

The arbitrator appeared to answer the first question—whether plaintiff failed on claims unrelated to the claims on which he succeeded—in the negative.  Claims are related if "they involve a common core of facts or are based on related legal theories."  <u>Thomas v. City of Tacoma</u>, 410 F.3d 644, 649 (9th Cir. 2005) (internal quotation marks omitted).  "[T]he focus is on whether the unsuccessful and successful claims arose out of the same 'course of conduct.'"  <u>Schwarz v. Secretary of Health & Human Services</u>, 73 F.3d 895, 901 (9th Cir. 1995) (citations omitted).  As the Supreme Court of Hawaii has explained:

> If the plaintiff's claims for relief . . .
> involve a common core of facts or are based
> on related legal theories and much of
> counsel's time is devoted generally to the
> litigation as a whole, making it difficult
> to divide the hours expended on a claim-by-
> claim basis, such a lawsuit cannot be viewed
> as a series of discrete claims. In that
> situation, a plaintiff who has won
> substantial relief should not have his or
> her attorney's fee reduced simply because
> the trial court did not adopt each
> contention raised.

Schefke v. Reliable Collection Agency, Ltd., 96 Haw. 408, 444,

32 P.3d 52, 88 (Haw. 2001) (alterations, citations, and internal

quotation marks omitted) (quoting Hensley).

Here, the arbitrator explained that the principle

guiding his award of attorney's fees in the arbitration was

whether "the attorneys' fees [are] reasonable in amount and

reasonably incurred in the litigation, and not whether they []

bear some mathematical relationship to the damages awarded."

Fee Award at 10.  Because YMCA's claims and contentions were

seemingly related, the arbitrator "focused on the significance

of the overall relief obtained by the plaintiff in relation to

the hours reasonably expended on the litigation," as "a

plaintiff who has won substantial relief should not have [its]

attorney's fee reduced simply because the [arbitrator] did not

adopt each contention raised."  Schwarz, 73 F.3d at 901 (quoting

Hensley).  Said another way, the arbitrator appeared to find

that his rejection of certain of YMCA's related positions was

not a reason to reduce the fee award given that YMCA prevailed in the arbitration, received the maximum damages permitted under the Amended PSA, and successfully defended against AKD's counterclaim in its entirety.[14] AKD's focus on the arbitrator's preliminary ruling on the remedies available to YMCA is therefore misplaced, because the <u>remedy</u> available to YMCA for AKD's default was not unrelated to the common core of facts or legal theory underlying YMCA's <u>claim</u> of default.

The arbitrator also explained that YMCA's failure to prevail on certain motions in the arbitration did not preclude an award of attorneys' fees. "The appropriate focus is on whether the claimed attorneys' fees are reasonable in amount and reasonably incurred," the arbitrator reasoned, "and not whether the YMCA prevailed on all of those matters." Fee Award at 10. The arbitrator appeared to find that the claims YMCA asserted were all related, arising from the same common core of facts and comprising the same proceeding. And AKD does not explain how any of YMCA's claims were unrelated to the common core of facts giving rise to YMCA's success in the arbitration.[15]

---

[14] The Court again notes that AKD's counterclaim sought relief valued at around $32 million. <u>See, e.g.</u>, YMCA Reply Ex. N at ¶¶ 84, 99, 103-05, ECF No. 10-13.

[15] The Court also questions the applicability of AKD's argument that YMCA's purportedly partial success precludes (continued . . . . )

As to the second <u>Hensley</u> question, the arbitrator
appears to have answered that question in the affirmative.  From
the arbitrator's analysis, <u>e.g.</u>, Fee Award at 10-13, it is at
least reasonable to infer that he determined that YMCA
"achieve[d] a level of success that makes the hours reasonably
expended a satisfactory basis for making a fee award,"  <u>Hensley</u>,
461 U.S. at 424.  The arbitrator "focused on the significance of
the overall relief obtained by the plaintiff in relation to the
hours reasonably expended on the litigation," <u>Schwarz</u>, 73 F.3d
at 901 (quoting <u>Hensley</u>), and concluded that some, but not all,
of YMCA's requested fees were reasonable.  This is not a case
where the record is clear that the arbitrator disregarded the
law; instead this is a case where the arbitrator was within his
discretion in determining YMCA was entitled to an award of
reasonable fees.

The Supreme Court of Hawaii has explained that "where

_____

(continued . . . . )
"awarding <u>full</u> attorneys' fees."  Opp. at 19 (emphasis added).
The arbitrator did not award YMCA the full attorneys' fees it
requested.  In contrast, the arbitrator:  (1) denied YMCA's
request for attorneys' fees and costs relating to mediation, Fee
Award at 4; (2) reduced the hourly rate of attorney Nickolas
Kacprowski from $395.00 per hour to $375.00 per hour, <u>id.</u> at 11;
(3) reduced certain paralegal and law clerk hourly rates, <u>id.</u> at
12; (4) denied YMCA's request for professional fees incurred to
prepare YMCA's request for attorneys' fees, expenses, and costs,
<u>id.</u>; and (5) denied YMCA's request for Dispute Prevention &
Resolution, Inc.'s fees, <u>id.</u> at 13.

a plaintiff has obtained excellent results, his or her attorney should recover a fully compensatory fee because litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee."[16] Schefke, 96 Haw. at 444, 32 P.3d at 88 (alterations and internal quotation marks omitted) (quoting Hensley). Moreover, "there is no precise rule or formula for making these determinations." Hensley, 461 U.S. at 434. The arbitrator "necessarily has discretion in making this equitable judgment" and "[p]roportionality is not the test." Id. at 435 n.11, 436-37; McCown v. City of Fontana, 565 F.3d 1097, 1104 (9th Cir. 2009) ($54,012.76 in fees awarded where damages recovered were $15,000.00). As noted above, this arbitration featured over 50,000 pages of documents exchanged in discovery, 19 depositions, 8 motions, 468 exhibits, and 7 days of testimony by 19 witnesses. See YMCA Motion at 1, 5-6; YMCA Reply at 1. On

---

[16] For this reason, among others, AKD's reliance on YMCA's failure to prevail on its tortious interference claim to show that YMCA was only "partially" successful in the arbitration, Opp. at 17 n.10, is unavailing. In addition, and as YMCA points out, AKD was unsuccessful on all seven counts of its counterclaim. E.g., YMCA Reply at 15-16. Even if this Court could properly assess the Fee Award on a motion-by-motion or claim-by-claim basis, therefore, it appears unlikely that this exercise would favor AKD.

this record, the Court does not find that the arbitrator exceeded his authority in awarding fees to YMCA.

### C. Twenty-Five Percent Statutory Cap on Attorneys' Fee Awards

AKD contends in the alternative that the Fee Award is unreasonable because the arbitrator "disregarded" the statutory cap of twenty-five percent of the damages awarded under HRS § 607-14.[17]  Opp. at 16, 20-21.  The arbitrator discussed AKD's argument at length in the Fee Award, and interpreted the Amended PSA to permit a fee award in excess of the twenty-five percent cap.  Fee Award at 5-9.  In light of the arbitrator's analysis— which the Court finds within his authority and adequately supported by the Amended PSA, relevant case law, and applicable statutes—the Court will not extensively revisit the issue.

---

[17] HRS § 607-14 directs:

> In all the courts, in all actions in the nature of assumpsit and in all actions on a promissory note or other contract in writing that provides for an attorney's fee, there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable. . . . provided that this amount shall not exceed twenty-five per cent of the judgment.  Where the note or other contract in writing provides for a fee of twenty-five per cent or more, or provides for a reasonable attorney's fee, not more than twenty-five per cent shall be allowed.

As the arbitrator explained, the Amended PSA directs
that the arbitration would be governed by the HUAA.  Amended PSA
§ 18.2(a).  The HUAA, at HRS § 658A-21(b), states:  "An
arbitrator may award reasonable attorneys' fees and other
reasonable expenses if such an award is authorized by law in a
civil action involving the same claim or by agreement of the
parties to the arbitration proceeding."  HRS § 658A-21(b)
(emphasis added).  Although HRS § 607-14 limits fee awards by
statute in certain types of actions to "twenty-five per cent of
the judgment," the Supreme Court of Hawaii has held that "awards
of attorneys' fees can be valid and authorized based on a party
agreement, even if the resulting award exceeds the '25% of the
judgment' limitation included in HRS § 607-14."  Kona Vill.
Realty, Inc. v. Sunstone Realty Partners, XIV, LLC, 123 Haw.
476, 478, 236 P.3d 456, 458 (Haw. 2010).  As the Supreme Court
of Hawaii reasoned in Kona Village:

> [T]he existence of statutory language in HRS
> § 607-14 that limits the award of attorneys'
> fees in court actions for assumpsit draws
> attention to the fact that the legislature
> could have injected similar language into
> Chapter 658 generally, or HRS § 658A-21(b)
> specifically, but declined to do so. In
> other words, the fact that HRS § 607-14
> specifically limits awards to 25% of the
> judgment in assumpsit actions and that no
> such language is included in HRS § 658A-
> 21(b) demonstrates that the legislature did
> not intend a similar limitation on
> arbitration awards.  At the very least, the
> legislature has not evinced an intent one

>             way or the other with respect to arbitration
>             proceedings that decide actions in
>             assumpsit.

Kona Vill. Realty, Inc., 123 Haw. at 478, 236 P.3d at 458.

The arbitrator cited and discussed the Kona Village case. Fee Award at 7-9. He found the holding in Kona Village applicable under the Amended PSA, which authorized him to award "reasonable attorneys' fees" and included no cap. Id. at 8. In determining whether the arbitrator exceeded his authority under the Amended PSA, "there should be no second guessing by the court of the arbitrator's interpretation of his or her authority so long as the arbitrator's interpretation could have rested on an interpretation and application of the agreement." In re Grievance Arbitration Between State Org. of Police Officers, 135 Haw. 456, 463, 353 P.3d 998, 1005 (Haw. 2015) (citations and internal quotation marks omitted).

AKD argues that the language of the Amended PSA governing the award of attorneys' fees is distinguishable from the provisions at issue in Kona Village. Opp. at 20-21. According to AKD, because the Amended PSA limits the "prevailing part[ies']" award to "reasonable attorneys' fees," HRS § 607-14 imposes a twenty-five percent cap on YMCA's award. Id. at 20-21; see also HRS § 607-14 ("Where the note or other contract in writing . . . provides for a reasonable attorney's fee, not more than twenty-five per cent shall be allowed."). But Kona Village

plainly forecloses AKD's argument in the context of arbitration.

And, under Hawaii law, "even if we were to conclude that the

Arbitrator[] mistakenly failed to adhere to the cap for

attorneys' fees awards in court actions, this legal error would

not be a sufficient ground for overturning the Award."[18] Kona

Vill. Realty, Inc., 121 Haw. at 115, 214 P.3d at 1105.

Accordingly, and given the narrow scope of the Court's review,

_____

[18] Even if § 607-14's twenty-five percent cap applied to
awards of attorneys' fees in arbitration notwithstanding Kona
Village, two other grounds seem to support the arbitrator's
decision to award YMCA attorneys' fees in excess of the cap.
YMCA Reply at 17. First, the Supreme Court of Hawaii has
explained that HRS § 607-14 is inapplicable to actions where
"the recovery of money damages is not the basis of a claim
factually implicating a contract." Chock v. Gov't Employees
Ins. Co., 103 Haw. 263, 268, 81 P.3d 1178, 1183 (Haw. 2003)
(quoting Leslie v. Estate of Tavares, 93 Haw. 1, 7, 994 P.2d
1047, 1053 (Haw. 2000)). The dispute in this arbitration
centered on title to the Property, and the primary relief sought
in both YMCA's demand and AKD's counterclaim was equitable in
nature. E.g., YMCA Reply at 16-17. It therefore appears that,
even if § 607-14 applied to arbitration proceedings deciding
actions in the nature of assumpsit, it would be inapplicable
based on the relief the parties sought in this arbitration.

Second, AKD's counterclaim sought relief valued at around
$32 million. See, e.g., YMCA Reply Ex. N at ¶¶ 84, 99, 103-05,
ECF No. 10-13. Accordingly, the attorneys' fees the arbitrator
awarded YMCA were far below twenty-five percent of the relief
AKD sought in its counterclaim. YMCA Reply at 17.

The Court notes, however, that YMCA made these additional
arguments for the first time in its reply brief. The Court will
not, therefore, consider them, because under Local Rule 7.4,
"[a]ny argument raised for the first time in the reply shall be
disregarded." Nevertheless, the Court finds that the arbitrator
did not exceed his authority in awarding YMCA attorneys' fees in
excess of § 607-14's twenty-five percent cap given Kona
Village's clear resolution of this issue.

the Court finds no basis on which to vacate or otherwise alter the arbitrator's conclusion that the 25% cap did not apply.[19]

### D. Attorneys' Fees Directed at a Third Party

Section 19.8 of the Amended PSA in this matter—the agreement that governed the arbitration and that the arbitrator interpreted—set forth the fees that a prevailing party could be awarded following arbitration. As earlier stated, that section directs:

> In the event YMCA or Developer brings any suit or other proceeding with respect to the subject matter or enforcement of this Agreement, the prevailing party (as determined by the court, agency or other authority before which such suit or proceeding is commenced) shall, in addition to such other relief as may be awarded, be entitled to recover <u>reasonable attorneys' fees, expenses and costs of investigation as actually incurred</u> (including, without limitation, reasonable attorneys' fees, expenses and costs of investigation incurred in appellate proceedings, costs incurred in establishing the right to indemnification,

_____

[19] AKD argues that YMCA "poisoned the well" before the Fee Award when it filed a Request For Leave to File Reply Brief in Support of the YMCA's Request ("Request for Leave"), which also attached YMCA's proposed reply brief. Opp. at 9-11 and Ex. 7; AKD Reply at 10 n.7. AKD reacted to YMCA's Request for Leave by filing its own request for leave to file a response. Fee Award at 2 n.1. In the Fee Award, however, the arbitrator expressly noted that he had denied the parties' requests because the Findings did not contemplate the filing of a reply brief or contain a deadline for such filings. <u>Id.</u> The arbitrator was within his authority in denying the parties' requests, and the Court finds that YMCA's denied Request for Leave is not a ground on which to vacate, correct, or modify the Fee Award.

> or in any action or participation in, or in
> connection with, any case or proceeding
> under Chapter 7, 11, or 13 of the Bankruptcy
> Code, 11 U.S.C. 101 et seq. or any successor
> statutes).

Amended PSA § 19.8 (emphasis added). The arbitrator thus had broad authority to award reasonable fees, expenses and costs of investigation, and properly exercised that authority to award YMCA fees associated with motions to compel third party Oliver McMillan to produce documents leading up to the arbitration. The Court finds that it is plausible that the Amended PSA's authorization to award the prevailing party's fees and "costs of investigation" includes work performed to gather necessary documents and other evidence from third parties. The arbitrator was within his authority in making this determination.

AKD cursorily argues that the Supreme Court of Hawaii's decision in Kaleikini v. Yoshioka, 129 Haw. 454, 304 P.3d 252 (Haw. 2013) precludes YMCA's recovery of attorneys' fees relating to motions to compel documents from a third party. Opp. at 21. But the Court finds that case inapposite. In Kaleikini, the plaintiff requested fees following an action against the City and County of Honolulu and the State of Hawaii to challenge the approval of a rail project. Id. at 458, 304 P.3d at 256. The Supreme Court of Hawaii, noting that an award against the state was barred by sovereign immunity, framed the question presented as follows: "whether a defendant may be held

liable for the full award of attorney's fees, where an award against a co-defendant is barred by sovereign immunity." Id. at 471, 304 P.3d at 269. The court reasoned that while the plaintiff could recover her fees against the City and County of Honolulu, she was precluded from recovering fees for "work that is clearly identifiable as being directed at another party, such as [the plaintiff's] replies to the State . . . ."[20] Id.

This matter does not require an analysis of the effect of sovereign immunity on YMCA's award of attorneys' fees and costs. YMCA's motions to compel document production, moreover, were not directed at another party to the arbitration or meant to respond to amici; rather, the document productions requested were related to YMCA's claims against AKD. And, even if Hawaii law precluded YMCA from recovering for legal work directed at

---

[20] The Supreme Court of Hawaii, in dicta, also noted that the plaintiff could not recover for work clearly identifiable as being directed at Faith Action for Community Equity and Pacific Resource Partnership (FACE/PRP), which previously filed an amicus curiae brief in the matter. Kaleikini, 129 Haw. at 459 n.5, 304 P.3d at 257 n.5. The plaintiff in Kaleikini, however, did "not seek fees or costs from FACE/PRP." Id. Here, by contrast, the third party to which YMCA's motions to compel were directed was not an amicus and thus the statement in Kaleikini appears to be inapplicable. Moreover, the Court does not read Kaleikini to preclude a prevailing party's recovery of reasonable fees for legal work involving third parties that is necessary to prosecute its claims, especially given the Amended PSA's broad language allowing YMCA's recovery of "fees, expenses and costs of investigation as actually incurred . . . ." Amended PSA § 19.8.

third parties, this Court will not vacate an award based on "arbitrators' imperfect understanding of law." <u>Tatibouet</u>, 99 Haw. at 236, 54 P.3d at 407.  The Court finds no grounds on which to disturb the arbitrator's award of fees for YMCA's motions to compel Oliver McMillan to produce documents.

### E. Attorney's Fees for Unsuccessful Motions

Repeating another argument that the arbitrator analyzed and rejected, AKD contends that fees relating to unsuccessful motions are necessarily unreasonable.  Opp. at 21-22.  The arbitrator in the Fee Award noted that "AKD cited no authority for th[is] proposition,"  Fee Award at 10 n.6, and the Court similarly notes that AKD fails to cite any authority in its opposition brief.  <u>See</u> Opp. at 21-22.  The arbitrator explained: "In considering whether to award reasonable attorneys' fees with respect to [the motions AKD challenges], the appropriate focus is on whether the claimed attorneys' fees are reasonable in amount and reasonably incurred, and not on whether the YMCA prevailed on all of those matters."  Fee Award at 10.

The arbitrator's statement was within his authority and is at least a plausible interpretation of the Amended PSA. The Amended PSA authorizes an award of attorneys' fees and costs to the "prevailing party" in "<u>any suit or other proceeding</u> with respect to the subject matter or enforcement of this agreement."

41

Amended PSA § 19.8 (emphasis added).  It is significant that the Amended PSA allows a fee award to the prevailing party in "any suit or other proceeding," rather than on every motion or discrete filing within the broader arbitration.

As the record in this matter makes clear, a single arbitration may comprise numerous motions and other filings. AKD's argument incorrectly focuses on these individual motions that make up a proceeding as opposed to the proceeding as a whole; but it is the latter that the Amended PSA seems to look to in determining whether a party was the "prevailing party." This interpretation is consistent with the Supreme Court of Hawaii's conclusion that "litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee."  Schefke, 96 Haw. at 444, 32 P.3d at 88 (alterations and internal quotation marks omitted) (quoting Hensley).

## CONCLUSION

In sum, section 18.2(d) of the Amended PSA states that "[t]he award rendered by the Arbitrator shall be final, and judgment may be entered upon it in accordance with the HUAA." [21]

---

[21] The Court additionally notes that the arbitration award is not contrary to public policy, and AKD has not argued that it (continued . . . . )

42

Finding no grounds for vacatur, correction, or modification under the HUAA, the Court will confirm the arbitration award.

For the foregoing reasons:

(1)  YMCA's Motion for Order Confirming Arbitration Award, ECF No. 1, is GRANTED;

(2)  AKD's Countermotion to Vacate or Correct the Arbitration Award, ECF No. 7, is DENIED; and

(3)  Pursuant to HRS § 658A-25, the Court ORDERS the Clerk of Court to enter a judgment confirming the arbitrator's Findings of Fact, Conclusions of Law, and Order, ECF No. 1-2, and Ruling on YMCA's Request for Attorneys' Fees and Costs, ECF No. 1-3, including, among other things, the award of $1,946,579.17 in favor of YMCA and against AKD.

---

(continued . . . . )
is.  The Ninth Circuit has cautioned that "courts should be reluctant to vacate arbitral awards on public policy grounds." <u>Arizona Elec. Power Coop., Inc. v. Berkeley</u>, 59 F.3d 988, 992 (9th Cir.1995); <u>see also</u> <u>McCabe Hamilton & Renny Co. v. Int'l Longshore & Warehouse Union, Local 142, AFL-CIO</u>, 624 F. Supp. 2d 1236, 1248-49 (D. Haw. 2008).  In Hawaii, moreover, "[t]he public policy exception is applicable only in cases where enforcing an arbitration award or contract would involve illegality or violate public policy."  <u>Matter of Hawai'i State Teachers Ass'n</u>, 140 Haw. at 400, 400 P.3d at 601.  Enforcing the arbitration award here would not implicate these grounds.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, June 5, 2018.



_____
Alan C. Kay
Sr. United States District Judge

Young Men's Christian Association of Honolulu, a Hawaii Nonprofit Corporation v. Aloha Kai Development, LLC, a Hawaii Limited Liability Company, Civ. No. 18-00086, Order Granting Petitioner's Motion for Order Confirming Arbitration Award and Denying Respondent's Countermotion to Vacate of Correct the Arbitration Award.